UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**G&C CONSTRUCTION, LLC**                              **CIVIL ACTION**

**VERSUS**                                             **NO. 11-2566**

**KIEWIT LOUISIANA CO.**                               **SECTION "K"(3)**

## ORDER AND OPINION

Before the Court is the "Motion to Dismiss with Prejudice the Claims of G & C Construction, LLC Against Kiewit Louisiana Co." filed by U.S. Specialty Insurance Company (Doc. 182). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned GRANTS the motion.

Background

This suit involves a claim by G & C Construction, LLC ("G & C") against Kiewit Louisiana Company ("Kiewit") for breach of a Material Contract dated April 13, 2011 for a project identified in the Material Contract as "WBV-1.1, Engineered Alternative Measure, Mississippi River Levee, "Project Number "USACE Contract NO. W912P8-11-D-009, Task Order 002." Doc. 1, Ex. 1. The United States Army Corps of Engineers, as owner, and Cycle, Construction Company, Inc. as prime contractor, entered into several contracts for construction of levee projects, including, W912P8-11-D-009, Task Order 0002, WBV-MRL1.1, Westbank & Vicinity, Mississippi River Levee, Engineered Alternative Measure, Oak Point to Oakville at Placquemines Paris, Louisiana ("Project 1.1"). Cycle, as prime contractor, and Kiewit, as subcontractor, then entered into a subcontract for work on Project 1.1. Following execution of that contract, Kiewit, as subcontractor, and G & C, as seller, entered in to a "Material Contract" under which G & C contracted to provide certain materials

to Kiewit for Project 1.1.

In connection with the Material Contract for Project 1.1 between G & C and Kiewit, G & C as Principal and U.S. Specialty Insurance Company ("U.S. Specialty") as Surety executed Supply Bond No. 1000857051 in favor of Kiewit in the penal sum of $2,444,699.00  Doc. 202-1, Ex. 1.   G & C, as principal, and  G & C, Chris Groner and Karen Groner, as indemnitors, also executed a General Indemnity Agreement ("GIA") in favor of U.S. Specialty.  The GIA obligates the indemnitors to:

> indemnify, keep indemnified, reimburse and save and hold [U.S. Specialty] harmless from and against any and all demands, liabilities, losses, costs, damages, attorney's fees and expenses, investigative fees and expenses . . . and other professional or consultants' fees and expenses of any kind, in-house attorneys' fees and expenses, interest, court costs and any and all other types of liabilities, losses, costs or expenses of whatsoever kind or nature, and from and against all such liabilities, losses, or expenses which [U.S. Specialty] may sustain or incur or which arise by reason of or in any manner in consequence of . . . the execution or procurement by [U.S. Specialty] of any bond; the failure of [G & C, Chris Groner or Karen Groner] to perform or comply with any and all of the terms, covenants and conditions of [the Indemnity Agreement] . . ..

Doc. 182, Ex. A, paragraph III.   The GIA further states that the indemnitors' obligations include "the obligation of the Principal and Indemnitors to indemnify [U.S. Specialty]" including "a specific obligation to pay [U.S. Specialty] the amount of any existing liability of [U.S. Specialty] on or in connection with a Bond, whether such liability is contingent or noncontingent, disputed or undisputed, liquidated or unliquidated…." Id.   The following additional provisions of the GIA are relevant to consideration of this motion:

> IV.  ASSIGNMENT
>     A.  As security for all of the provisions of this Agreement and
>  any other indebtedness or liabilities of the Principal and Indemnitor
>  to the Surety, whenever and however incurred, the Principal and

Indemnitor do hereby assign, transfer, pledge, convey and set-over to the Surety the property, rights, and entitlements, and any proceeds thereof, whether such property, rights, entitlements or proceeds shall be now owned or hereafter acquired, described herein below:

  1. All right, title and interest of any Principal or Indemnitor in, to or arising in any manner out of any Contract including, without limitation, the right to receive progress payments, payments on claims, changes or allowances, retained sums or any and all other monies due or to become due deriving in any manner from any Contract;

 . . .

6. All right, title and interest of any Principal or Indemnitor in and to any causes of action, claims, demands, or actions of whatsoever kind or nature which any Principal may have or acquire against any party to any Contract, or causes of action, claims, demands, or actions of whatsoever kind or nature arising out of or connected with any Contract, including but not limited to, actions against any owner, obligee, design professional, subcontractor, supplier, laborer, material man or any other person or entity performing or providing labor, materials or services in connection with any work called for in connection with any Contract.

 . . .

VI.  ATTORNEY IN FACT

The principal and indemnitor hereby irrevocably nominate, constitute, appoint and designate the surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of such principal and indemnitor assigned, transferred and set over to the surety in this agreement, and in the name of such principal and indemnitor to make execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the surety in order to give full effect to the surety under all other provisions of this agreement.

 . . .

IX.  SETTLEMENTS

The surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise or appeal any claim, demand, suit, award or judgment on or in connection with any Bond or Bonded Contract. If, however, any Principal or Indemnitor desires

> that any claim, demand, suit, award, or judgment be defended, resisted or litigated, or that any judgment, award or assessment against any Principal or the Surety be appealed or protested, such principal or Indemnitor shall:
> A. Give written notice to the Surety to this effect by certified or registered mail; and
> B. Simultaneously therewith deposit with the Surety cash, securities or other collateral, in form and amount acceptable to the Surety in its sole and absolute discretion, to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration , indemnification or reimbursement pursuant to this Agreement. . . . Indemnitor's performance of both sub-paragraphs A and B of this paragraph IX shall be an absolute condition precedent to any obligation of Surety to defer or accede to, or cooperate with, any request by Principal or Indemnitor that Surety defend, resist, litigate, appeal or protest, as applicable, any claim, demand, suit, award or judgment provided that nothing in this paragraph IX or otherwise in this Agreement shall be deemed to create or imply the existence of any such obligation.

Doc. 182-2, Exhibit A.

In October 2011, after disputes arose between G & C and Kiewit, G & C filed suit against Kiewit seeking to recover damages for alleged breach of contract. Kiewit, in turn, filed a counterclaim against G & C. Kiewit also filed a third party claim against U.S. Specialty alleging that it was liable for all legal and delay damages owed to Kiewit due to G & C's failure to fully perform its duties and obligations under the material contract for Project 1.1. Doc. 26.

After G & C filed suit against Kiewit, U.S. Specialty made a written demand for Chris and Karen Groner to post $2,000,000.00 in collateral pursuant to the terms of the GIA. Doc. 182, Ex. B. U.S. Specialty also sent a letter to counsel for G&C demanding that G&C post $2,000,000.00 in collateral pursuant to the GIA. Doc. 182, Ex. C. Neither G&C nor the Groners posted the collateral demanded by U.S. Specialty. Additionally, U.S. Specialty sought a personal guarantee from Tommy Cobb, the Vice-President of Operations for G & C. Mr. Cobb was not a principal or

indemnitor under the GIA, nor was he a shareholder in G & C.  Doc. 202-1, Ex. A, p. 2.

A number of G & C's subcontractors filed suits in various venues against G & C and U.S. Specialty seeking to recover under the Supply Bond.  U.S. Specialty ultimately settled the claims filed against it by G&C's subcontractors.  In November 2012, U.S. Specialty entered into a settlement agreement with Kiewit to settle the claims G & C brought against Kiewit and those brought by Kiewit against G&C.  Patrick Laverty, a Bond Claims Attorney for mover who oversaw, administered and adjusted "the performance and payment claims asserted against the supply bond issued for a Material Contract dated April 13, 2011 between Kiewit Louisiana Co., and G&C Construction, LLC" stated in his affidavit submitted in support of U.S. Specialty's motion that the settlement agreement provides, in pertinent part:

> a.  U.S. Specialty (on behalf of itself and G & C), Kiewit, Cycle and Travelers hereby release, acquit, and forever discharge each other and each other's successors and assigns from any claim rights, demands, and any legal or equitable causes of action whatsoever related to Project 1.1, except as specifically reserved elsewhere in this agreement and except as necessary to enforce this agreement.
>
> b.  U.S. Specialty shall cause the claims of G&C asserted in the G&C Lawsuit to be dismissed with prejudice against Kiewit, Cycle, and Travelers . . .."

Doc. 182-2, Ex. 1, p.3.

U.S. Specialty  now moves this Court to dismiss the claims asserted by G & C against Kiewit, Cycle and Travelers with prejudice.  Despite denominating its motion as one to dismiss, U.S. Specialty submitted evidence supporting its motion thereby converting the motion into one for summary judgment.  In opposing U.S. Specialty's motion G&C acknowledged that "U.S. Specialty has essentially moved for summary judgment under Federal Rule of Civil Procedure 56."  G&C urges that the motion be stricken for failure to file a "separate and concise statement of material facts

which the moving party contends presents no genuine issue" as required by Local Rule 56.1, and alternatively urges that the motion be denied on the merits.  Because U.S. Specialty's failure to comply with Local Rule 56.1 does not compromise the Court's ability to consider the motion, the Court will not strike the motion and will construe the motion as one for summary judgment.

Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651, 656 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).   When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2552-53; *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).  "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246

F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3d 851,857 (5th Cir. 2010)(internal citations omitted).

## Law and Analysis

U.S. Specialty construes the GIA pursuant to Louisiana law, and G&C does not contest the application of Louisiana law.  Therefore, the Court will apply Louisiana law.  "A contract of indemnity is construed in accordance with the general laws governing contract interpretation– '[w]hen the words of a contract are clear, *unambiguous*, and lead to no absurd consequences, the contract is interpreted by the court *as a matter of law.'"  Abbott v. Equity Group, Inc.,* 2 F.3d 613, 626 (5th Cir. 1993), quoting *Carter v. BRMAP*, 591 So.2d 1184, 1188 (La. App. 1st Cir. 1991)(emphasis in original).

Under the terms of the Surety Bond, G & C agreed to "well and truly perform" its obligations arising under the Material Contract covered by the Surety Bond and also bound itself to "promptly pay all other obligations incurred by [it] in connection with such work." Doc. 202-1 Ex. 1, p. 1.  G&C does not contest that it did not make full payments to its subcontractors under the Material Contract and it admits that it submitted  "substantial" invoices and supporting documentation from G&C's subcontractors "for payment to U.S. Specialty under the Supply Bond. Doc. 202-1, Ex. A.  G&C's failure to make full payment to its subcontractors constitutes a breach

of the Surety Bond.

The GIA unambiguously indicates that G&C as principal and the Groners, as indemnitors assigned all of their "right, title, and interest" in "any causes of action, claims, demands, or actions of whatever kind" that G&C might have had in connection with the contract that was the subject of the Supply Bond to U.S. Specialty. The GIA further gives the surety the "sole and absolute discretion" discretion to "settle" claims or suit in connection with "any bond or Bonded Contract."[1] Doc. 182, Ex. A, paragraph IX. Nothing in the GIA obligates U.S. Specialty to seek approval from G&C or the indemnitors before settling claims arising in connection with the bond or Bonded contract. Although the GIA authorizes U.S. Specialty to settles claims arising in connection with the Supply Bond, the GIA does set forth a procedure by which the Principal or the Indemnitor can require U.S. Specialty to defend, resist, or litigate claims. Id. To invoke that provision of the GIA, the Principal or Indemnitor must provide written notice via certified or written mail, to the Surety of the Principal or Indemnitor's desire to require the Surety to defend, resist, or litigate claims. The Principal or Indemnitor must also "simultaneously [] deposit with the Surety cash, securities or other collateral, in form and amount acceptable to the Surety in its sole and absolute discretion to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration, indemnification or reimbursement pursuant to [the GIA]|." The GIA makes it clear that the two above cited affirmative acts required by the Principal or Indemnitor are "an absolute condition precedent to any obligation of Surety to defer or accede to, or cooperate with, any request by Principal or Indemnitor that Surety defend, resist, litigate, appeal or protest, as

---

[1] The GIA defines a "Bonded Contract" as "any Contract in connection with which a Bond shall have been issued." Doc. 182-2, Ex. A.

applicable, any claim, demand, suit, award, or judgment, provided that nothing in this paragraph IX or in this Agreement shall be deemed to create or imply the existence of any such obligation." Id. It is undisputed that neither C&G as Principal nor the Groners as Indemnitors deposited any collateral with U.S. Specialty.  Given the failure of G&C and the Groners to fulfill the condition precedent to requiring U.S. Specialty to pursue G&C's claim against Kiewit, the Court concludes that U.S. Specialty was entitled to settle the C&G's claim against Kiewit.

  G & C urges that U.S. Specialty settled G & C's claims "pertaining to the MRL-WBV 9 and Chevron levee project" although it had no right to settle these claims.  Doc. 202, p.6.  G & C has not offered any competent summary judgment evidence that U.S. Specialty settled this claim, and the evidence offered by U.S. Specialty indicates a settlement of only the claims related to Project 1.1 which is identified as W912P8-11-D-009, Task Order 0002, WBV-MRL1.1.  Moreover, the caption of U.S. Specialty's motion states "THIS APPLIED TO 2:11-CV-02566 ONLY," and review of  G & C's complaint in Civil Action 11-2566 does not reveal a claim for "MRL-WBV 9A and Chevron levee project."  Thus, G & C's contention does not provide a basis for denying U.S. Specialty's motion.

  G & C also contends that  dismissal of its claim  against Kiewit is inappropriate because U.S. Specialty exceeded its authority under the GIA to settle G & C's claim because it failed to consult with G & C regarding the terms of the settlement with Kiewit, and did not advise G & C or the Groners that failing to post collateral would result in U.S. Specialty settling with Kiewit.  The GIA does not require that U.S. Specialty consult with G & C prior to the settlement of its claims or notify G & C that the failure of it or the Indemnitors to post collateral acceptable to U.S. Specialty may result in settlement of the claims.  The language of Paragraph IX of the GIA clearly indicates  that

9

absent the Principal or Indemnitors' failure to post collateral, the Surety has the exclusive authority to settle the Principal's claims.

In opposing the motion, G & C alleges that U.S. Specialty acted in bad faith in settling the claims against Kiewit. G & C has not offered any factual evidence to support that conclusory allegation. In the absence of factual support for G & C's allegations that U.S. Specialty acted in bad faith in settling G & C's claims against Kiewit, U.S. Specialty is entitled to summary judgment dismissing G & C's claims against Kiewit. *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 721 (5th Cir. 1995).

G & C also asserts that U.S. Specialty's failure to pay any amounts to G & C's subcontractors prior to October and November of 2012 constitutes "bad faith dealing and unfair trade practices." Any such claim by G & C against U.S. Specialty is separate and distinct from the issues involved in this motion, i.e. whether G & C's claims against Kiewit should be dismissed. Even if claims were related, G & C has not offered any factual support for its allegations of bad faith and unfair trade practices.

Additionally G& C urges that U.S. Specialty is not entitled to summary judgment because although U.S. Specialty settled the claims of G & C's suppliers for approximately $1,000,000.00, U.S. Specialty never requested collateral less than $2,000,000.00. This contention does not warrant denial of the motion for summary judgment. The GIA clearly and unambiguously gives U.S. Specialty "sole and absolute discretion" to determine the "form and amount" of the collateral to be posted. Because G & C has failed to raise any issue of genuine issue of material fact with respect to U.S. Specialty's entitlement to dismiss G & C's claim against Kiewit, the Court grant's U.S. Specialty's motion. U.S. Specialty is ordered to file a proposed Judgment not later than **August 20,**

**2013.**

    New Orleans, Louisiana, this 12th day of August, 2013.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE
